## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ADAM MADHAT, individually and on behalf of all others similarly situated, | ) ) ) ) | CASE NO. 5:20-cv-764 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION** |
| LIPSEY COMMUNICATIONS, LLC, d/b/a Connectivity Source, | ) ) ) ) | **AND ORDER** |
| DEFENDANT. | ) | |

Plaintiff, Adam Madhat ("Madhat") on behalf of himself and others similarly situated, brought this action alleging that defendant, Lipsey Communications, LLC d/b/a Connectivity Source ("Connectivity Source"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111, *et seq*; Article II Section 34a of the Ohio Constitution; and the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15. (Doc. No. 1, Complaint ["Compl."].) To date, six opt-in plaintiffs (collectively with Madhat, the "plaintiffs") have consented to join the FLSA collective action. (*See* Doc. Nos. 5, 6, 8, 9.)

This matter is now before the Court on Connectivity Source's motion to compel arbitration and stay, or dismiss, this action. (Doc. Nos. 14, 21 ["Mots."].)[1] Plaintiffs filed

---

[1] Connectivity Source has filed two motions to compel. The first, relates to plaintiff Madhat and opt-in plaintiffs Troy Duran, Nicolas Vaquera, and Brittany Aghuru. (*See* Doc. No. 14.) However, due to "an administrative error[,]" Connectivity Source failed to include opt-in plaintiffs Devin Bachelor, Brooke Austin, and Jessica Hines, in its original motion. As such, Connectivity Source filed a second motion to compel arbitration, related to those opt-in plaintiffs. (Doc. No. 21 n.1.) For ease of reference, the Court will refer those Connectivity Sources motions to compel (Doc. Nos. 14, 21) in the singular as the "motion" and will cite to the motions as ("Mots.").

a response in opposition (Doc. No. 18 ["Opp'n"]), and Connectivity Source filed a reply (Doc. No. 20 ["Reply"]. For the reasons set forth herein, Connectivity Source's motion is granted, and this case is dismissed.

## I.  Background

Connectivity Source is a "Sprint Authorized Retailer with 319 stores" located in fourteen states. (Compl. ¶ 2.) Madhat worked as an assistant manager at Connectivity Source's Twinsburg, Ohio location for approximately two months[2], during which time he was tasked with customer service and selling cellular phones and phone plans. (*Id.* ¶¶ 9, 18.) At the beginning of his employment, Madhat executed an Alternative Dispute Resolution Agreement (the "Agreement[s]"), agreeing to submit any claims "arising out of, relating to, or in connection with [his] employment … to binding arbitration…." (Doc. No. 14-2 ("Agreement") at 114[3].) Madhat brought this suit against Connectivity Source on April 8, 2020, on behalf of himself and others similarly situated, claiming that Connectivity Source violated the FLSA and applicable Ohio wage and hour laws. (Compl. ¶ 3.)

Connectivity Source claims that plaintiffs waived their right to a jury trial by executing the Agreements and now seeks to compel arbitration. (Mots. at 101, 180.) Plaintiffs claim the Agreements are invalid because (1) they lack consideration, (2) they lack mutual assent, and (3) they are unconscionable. (Opp'n at 147–56.) In the

---

[2] Connectivity Source asserts that Madhat only worked at Connectivity Source for one month. (Doc. No. 14-1, Declaration of Aaron Pyle, ¶ 6.)

[3] All plaintiffs executed identical arbitration agreements and all seven agreements have been appended to defendant's motions to dismiss. Because the Agreements are identical, when citing to particular Agreement provisions the Court will generally cite to Madhat's agreement, rather than citing to the specific provision in all seven Agreements. All page numbers refer to the page identification number generated by the Court's electronic docketing system.

alternative, plaintiffs claim that Connectivity Source's motion, as it relates to the opt-in plaintiffs, is premature and "[t]he arbitration issue [should] be decided after the full scope of the Collective is determined [at] the conclusion of discovery." (*Id.* at 158.)

## II.        LAW AND ANLYSIS

Connectivity Source has asked this Court to stay litigation proceedings pending arbitration in this matter. (Mots. at 101, 180.) The Federal Arbitration Act ("FAA") was intended to "promote arbitration to accord with the intention of the parties and to ease court congestion." *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967). Chapter 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA "embodies 'the strong federal policy in favor of enforcing arbitration agreements.'" *Kaz Co. v. Esselte Corp.*, No. 5:05-cv-814, 2005 WL 3088563, at *4 (N.D. Ohio Nov. 17, 2005) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)); *see also Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) ("The FAA manifests a liberal federal policy favoring arbitration agreements.") (internal quotation marks omitted). The Sixth Circuit "has repeatedly applied the FAA to arbitration agreements formed in the employment setting[,]" including FLSA claims. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376–77 (6th Cir. 2005).

3

Before compelling arbitration, a court must "engage in a limited review to determine whether the dispute is arbitrable…." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). To determine whether a dispute is arbitrable, the Court must first determine (1) whether "a valid agreement to arbitrate exists between the parties and [(2)] that the specific dispute falls within the subjective scope of that agreement." *Id.* If any federal statutory claims are asserted, the court will consider (3) whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio 2009).

## A.  Validity of the Agreements

Plaintiffs concede that all the Agreements at issue "are identical[,]" and, as such, claim the Agreements are all "invalid for the same reasons." (Opp'n at 158 n.4.) Further, plaintiffs do not dispute that plaintiffs each signed the Agreements electronically. (*See* Doc. Nos. 14-2 at 114; 14-3 at 117; 14-4 at 120; 14-5 at 123; 21-2 at 194; 21-3 at 197; 21-4 at 200.) Electronic signatures are valid under Ohio law. *See* Ohio Rev. Code § 1306.06(A). ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). Instead, plaintiffs attack the Agreements by asserting various contract formation and contract defense arguments.

Because arbitration agreements are fundamentally contracts, state contract law governs issues of contract formation such as validity, revocability, and enforceability. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). As mentioned above,

4

plaintiffs claim the Agreements are invalid for three reasons: lack of consideration, lack of mutual assent, and unconscionability. The Court will examine each of these arguments in turn.

### a. Consideration

Basic principles of contract law provide that a contract exists when there is an offer, acceptance, and consideration. *N. Side Bank & Trust Co. v. Trinity Aviation, LLC*, --N.E.3d--, 2020 WL 1870262, at *3 (Ohio Ct. App. 2020). Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012). "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* (citation omitted).

Plaintiffs claim that the Agreements "fail[] for lack of consideration because [they] do[] not impose any binding obligation or detriment on [Connectivity Source]." (Opp'n at 147.) But this argument is contradicted by the plain language of the Agreements. The Agreements make clear that *any claim* related to plaintiffs' employment shall be resolved by arbitration. (*See e.g.* Doc. No. 14-2 at 113.) Both parties—not just plaintiffs—were required to submit their employment-related claims to a mutually agreed upon arbitrator. (*Id.*) Giving up a right to trial is, itself, adequate consideration. *Robinson v. Mayfield Auto Grp., LLC*, 100 N.E.3d 978, 984 (Ohio Ct. App. 2017) ("[T]he parties' agreement to arbitrate all disputes serves as consideration….").

Plaintiffs appear to rely on a section of the Agreements titled "Exclusions from Arbitration" to  support their contention that Connectivity Source "is not bound" by the

5

Agreements. (Opp'n at 144.) The "exclusions" section categorically excludes five types of claims from mandatory arbitration: (1) workers compensation claims; (2) unemployment compensation claims; (3) employment benefits claims related to the company's ERISA plan; (4) "claims by [Connectivity Source] for injunctive relief to protect Company personnel or property rights, or to enjoin the breach of a legal or contractual duty owed by a current or former Employee, or for money owed to the Company by an Employee, whether by theft, breach of Company policy, or otherwise;" or (5) claims not arbitrable under applicable law. Plaintiffs take issue with exclusion number four, claiming that "[t]his 'carveout' covers the entire spectrum of claims that an employer might have against its employee...." (Opp'n at 144.)[4] But plaintiffs have adopted an overly broad interpretation of the provision.

The provision does not exempt "all claims for monetary damages of any kind and all claims for injunctive relief[,]" as plaintiffs assert. (*Id.*) The provision exempts certain claims for injunctive relief and claims for money *owed* to Connectivity Source by an employee due to theft, policy breach, or otherwise. Exempting a suit for money "owed" due to employee theft or a policy violation, is not equivalent to exempting "all claims for monetary damages. " (*See id.*) It is not difficult to envision a variety of potential claims that Connectivity Source would be required to arbitrate vis-à-vis employees—including noncompete disputes, severance disputes, and disclosure of confidential information

---

[4] Plaintiffs also appear to take issue with Connectivity Source failing to sign the Agreements. (Opp'n at 144; "The agreement is not signed by [d]efendant, nor is there a place for [d]efendant to sign it.") In Ohio, an arbitration agreement must be in writing to be enforceable but "the parties need not sign the agreement...." *Corl v. Thomas & King*, No. 05AP-1128, 2006 WL 1629740, at *2 (Ohio Ct. App. June 13, 2006).

claims, to name a few. Because the arbitration agreement binds both parties, it is supported by adequate consideration. *See Robinson*, 100 N.E.3d at 984.

Further, plaintiffs' reliance on *Harmon v. Philip Morris, Inc.*, 697 N.E.2d 270 (Ohio Ct. App. 1997) is misplaced. In *Harmon*, a former employee signed an "acknowledgement" stating that he received and understood a newly distributed "Sales Dispute Resolution Program" which provided that the "exclusive remedies for employees to resolve employment termination disputes with Philip Morris [was] by using a company ombudsman or mediation, or by seeking arbitration…." *Id.* at 271. First, the *Harmon* court noted that an "acknowledgement" in law is generally in the nature of an admission or a receipt and "not in the nature of an acceptance of an offer to create a contract." *Id.* at 272. By signing the acknowledgement, plaintiff simply acknowledged his receipt and understanding of Philip Morris' amended dispute resolution process, but plaintiff "never expressed assent to those terms." *Id.* Further, the Court noted that the "terms of the [arbitration clause] require[d] employees to arbitrate their claims against Philip Morris but [did] not similarly require Philip Morris to arbitrate its claims against them," because Philip Morris "reserve[d] the right to amend or terminate [the dispute resolution program] at any time…." *Id.*

The Agreements in the instant case are quite different than the "acknowledgement" at issue in *Harmon*. First, there is no doubt that the Agreements were presented in the form of contracts, rather than acknowledgments. The Agreements were signed "at the beginning of … employment" as a condition of employment. (Opp'n at 143.) These were not documents intended to acknowledge receipt of a new dispute resolution policy; rather, the Agreements were executed "in order to work for

7

[Connectivity Source]. (*Id.*) Further, and most importantly, the Agreements do not reserve the right for Connectivity Source to amend or terminate the Agreements at any time. The Agreements bind both employees and Connectivity Source, with few exceptions, to arbitrate employment-related disputes and, as such, are supported by adequate consideration.

### b.  Mutual Assent

Next, plaintiffs argue that the Agreements are invalid due to lack of mutual assent—though this argument is not entirely clear and appears to repeat elements of their consideration[5] and unconscionability arguments (discussed below). Nevertheless, plaintiffs' mutual assent argument seems to focus on plaintiffs' inability to understand the Agreement's implications. Plaintiffs contend that mutual assent does not exist because "[t]he meaning of arbitration is not self-evident to the average individual," and, therefore, the Agreements are void because plaintiffs did not have "full knowledge of [their] legal rights…." (Opp'n at 151.)

As an initial matter, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms." *Melia v. OfficeMax N. Am., Inc.*, No. 87249, 2006 WL 2627448, at *4 (Ohio Ct. App. Sept. 14, 2006) (quotation marks and citation omitted). And "nothing requires that an arbitration agreement be explained orally to a party prior to obtaining the party's signature." *Corl*, 2006 WL 1629740, at *4 (citation omitted); *see also AMB Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998) ("A person of ordinary mind cannot be heard to say that he was misled into signing a

---

[5] To the extent plaintiffs intend to argue that the Agreements lack mutual assent "because [they] only restrict [p]laintiff[s]" (Opp'n at 150), the Court has already dispelled of that argument, *supra*.

8

paper which was different from what he intended, when he could have known the truth by merely looking when he signed.") (quotation marks and citation omitted). "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he … did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." *Estate of Brewer v. Dowell & Jones*, No. 80563, 2002 WL 1454069, at *2 (Ohio Ct. App. July 3, 2002) (quotation marks and citation omitted). Plaintiffs may now wish they had not signed the agreements—or perhaps not even recall signing the Agreements—but they have not asserted that any plaintiff was not of "ordinary mind," and the crux of the Agreements was written, in bold font, directly above their signatures. (*See e.g.* Agreement at 114; "By signing below, I understand and agree to submit any claims arising out of … my employment with [Connectivity Source] to binding arbitration, and that this arbitration clause constitutes a waiver of my right to a jury trial….".) This is true even if a party agrees to waive a statutory or constitutional right. The agreement need not itemize all statutes or constitutional provisions that may be implicated. It is sufficient that the agreement lays out, in plain language, that the parties are waiving their rights to a jury trial. *See Jones v. Carrols, LLC*, 119 N.E.3d 453, 466 (Ohio Ct. App. 2019) (rejecting the argument that "because constitutional claims are not specifically mentioned in the arbitration agreement and thus are not covered by the agreement.") (quotation marks and record citation omitted). The Agreements at issue here do just that.

### c.  Unconscionability

In Ohio, unconscionability is a ground for revocation of a contract. "The determination of whether a contractual provision is unconscionable is fact-dependent and

requires an analysis of the circumstances of the particular case before the court." *Schaefer v. Jim Brown, Inc.*, 33 N.E.3d 96, 99 (Ohio Ct. App. 2015) (quotation marks and citation omitted). For an arbitration clause to be rendered invalid for unconscionability, it must be both procedurally and substantively unconscionable. *Id.* "The party claiming unconscionability bears the burden of proving that the contract or provision at issue is [both procedurally and substantively] unconscionable."[6] *Robinson*, 100 N.E.3d at 984.

### i.        Procedural Unconscionability

Procedural unconscionability concerns formation of the contract, and exists where the circumstances surrounding the formation of the agreement were such that no voluntary meeting of the minds was possible. *Schaefer*, 33 N.E.3d at 100 (citing *Porpora v. Gatliff Bldg. Co.*, 828 N.E.2d 1081, 1083–84 (Ohio Ct. App. 2005)). The procedural unconscionability prong focuses on "the relative bargaining position of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Id.* (quotation marks and citation omitted). When considering the relative bargaining positions of the parties, courts must consider factors such as the parties' ages, education, intelligence, business acumen and experience, and who drafted the contract. *Robinson*, 100 N.E.3d at 984. But it is not enough that the parties have unequal bargaining power, "a vast disparity is required" *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017–18 (6th Cir. 2005). Additionally, procedural

---

[6] The Court notes that plaintiffs' unconscionability argument relates almost exclusively to Madhat, and does not address the circumstances surrounding the opt-in plaintiffs' execution of the Agreements. As such, plaintiffs have failed to show that the circumstances surrounding the opt-in plaintiffs' signing of the agreements were such that the Agreements are void for unconscionability.

unconscionability is "not conditional on the existence of any one factor, but instead, is a fact-sensitive question that considers the surrounding circumstances of each individual case. *Shaefer*, 33 N.E.3d at 100 (citation omitted).

Plaintiffs assert the Agreements are procedurally unconscionable because (1) there was a disparity in bargaining power between the parties; (2) Connectivity Source drafted the Agreements; (3) Connectivity Source "possessed unique and superior knowledge of the employment environment"; (4) Madhat "would reasonably conclude that no alterations [to the Agreement] were permitted"; and (5) Madhat "did not even know what arbitration was" when he signed the Agreement. (Opp'n at 154.)

Madhat has failed, however, to address factors related to relative bargaining power such as age, education, intelligence, business experience and acumen. Further, Madhat's generalized grievances related to the Agreement—such as employer superior knowledge and employee (perceived) inability to alter the agreement—would work to invalidate nearly all employment-related arbitration agreements. Such a result runs contrary to Ohio's general presumption in favor of enforcing arbitration agreements. *See Sikes v. Ganley Pontiac Honda, Inc.*, No. 82889, 2004 WL 67224, at *2 (Ohio Ct. App. Jan. 15, 2004). Further, Madhat does not assert that alterations to the Agreement were not permitted, simply that he assumed he was unable to modify the terms of the Agreement. (Opp'n at 154.) And, in any event, "Ohio courts have found arbitration agreement are enforceable even when the employer retains the unilateral right to alter the agreement, provided that the agreement requires the employer to give advance notice of the changes." *Doerman v. Meijer, Inc.*, No. 1:17-cv-571, 2018 WL 4599890, at *3 (S.D.

Ohio Sept. 25, 2018). As such, Madhat's speculation about whether or not he was permitted to modify the terms of the agreement is insufficient to show unconscionability.

Further, Madhat claims that Connectivity Source did not explain the Agreement to him, and he "did not intend to agree to arbitration…." (Doc. No. 18-1 ¶ 8.) However, immediately preceding Madhat's signature on the Agreement is a paragraph, in bold type face, stating that Madhat read and understood the terms of the Agreement and the "arbitration clause constitutes a waiver of [his] right to a jury trial…." (Agreement at 114). At this point, Madhat was "free to walk away from the contract if he did not like the terms proposed by [Connectivity Source]." *Pruitt v. Strong Style Fitness*, No. 96332, 2011 WL 4842485, at *4 (Ohio Ct. App. Oct. 13, 2011); *see also Short v. Res. Title Agency, Inc.*, No. 95839, 2011 WL 1203906, at *4 (Ohio Ct. App. Mar. 31, 2011) ("[I]n the context of employment contracts, … when a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable."). There is no evidence that Madhat was not free to look elsewhere for employment or was forced to consent to the Agreement.

Finally, the Court need not speculate as to Madhat's—or any of the opt-in plaintiffs'—education, intelligence, or business acumen because plaintiffs failed to meet their burden to provide such information to the Court and, thus, have failed to show a vast disparity in bargaining power. Plaintiffs have failed to show procedural unconscionability which, in turn, has doomed their entire unconscionability argument because Ohio law requires plaintiffs to show *both* procedural and substantive unconscionability. Nevertheless, the Court will address plaintiffs' substantive arguments as well.

### ii.    Substantive Unconscionability

Substantive unconscionability goes to the specific terms of the agreement itself "without any consideration of the individual contracting parties." *Sikes*, 2004 WL 67224, at *2. The focus here is on whether the contract terms are commercially reasonable in the context of the transaction involved. *Id.*

Plaintiffs contend that the Agreements are substantively unconscionable because (1) "the [A]greement[s] waive[] major rights, including the right[] to a jury trial"; (2) they represents a significant departure from the FLSA's statute of limitations; (3) they provide for limited discovery and (4) they "saddle[] [plaintiffs] with unreasonable costs…." (Opp'n at 154.)

Plaintiffs' argument that the Agreements are substantively unconscionable because they operate as a waiver of plaintiffs' right to a jury trial, is unpersuasive. Indeed, that is the purpose of an arbitration agreement. And it is well settled that an employee asserting an FLSA claim may waive his right to a judicial forum and, instead, submit the claim to binding arbitration. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000); *see also Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[T]he FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable….").

In support of their statute of limitations argument, plaintiffs cite to *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603 (6th Cir. 2013), in which the court held that an employment agreement's six-month limitations period was violative of the FLSA's statute of limitations (two years for non-willful violations and three years for willful violations) and, thus, invalid. True, the Agreements at issue state that a party must

demand arbitration "within 180 days of the claim arising." (Agreement at 113.) However, such a provision does not serve to invalidate the entire Agreement. Even the *Boaz* court simply invalidated the limitations provision, rather than invalidating entire employment agreement. *Boaz*, 725 F.3d at 607 (holding that as applied to plaintiff's FLSA claim, "the [limitations] provisions [was] invalid.").

Severability is particularly appropriate here because the Agreements contains a severability provision that states:

> In the event that any provision of this Dispute Resolution Program is determined by the arbitrator or by a court of competent jurisdiction to be illegal, invalid, or unenforceable to any extent, such term or provision shall be enforced to the extent permissible under the law, and all remaining terms and provisions hereof shall continue in full force and effect.

(*See e.g.*, Agreement at 114.) When an arbitration agreement contains a severability clause, "such a clause expresses the parties['] intentions in favor of severance." *Scovill*, 425 F.3d at 1016 (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 674–75 (6th Cir. 2003)). Thus, to the extent that the Agreements' 180-day limitations period is invalid—which the Court need not presently decide—that provision would simply be severed, and the parties would still be required to submit their claims to binding arbitration. *See Morrison*, 317 F.3d at 675 ("[W]hen the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement.").

Plaintiffs do not elaborate on, or cite caselaw related to, their discovery-related unconscionability argument. They simply state that the Agreements limit their right to "robust discovery." (Opp'n at 154.) In general, "arbitration provisions that limit

14

discovery are enforceable, parties may bargain to limit their exposure to the cost of discovery." *Sager v. Coolidge, Wall, Womsley & Lombard Co.*, 3:05-cv-62, 2005 WL 8161325, at *1 (S.D. Ohio Dec. 28, 2005). Here, the Agreements allows for up to 15 interrogatories per party, up to 25 requests for production per party, depositions of the parties to the proceeding and up to four depositions of non-party witnesses, any technical experts designated to testify, third-party document subpoenas as appropriate, and any other discovery to which the parties agree. (Agreement at 113.) Plaintiffs do not even attempt to show why the permitted discovery is insufficient or unreasonable. And the Court finds that it is not.

Similarly, plaintiffs' argument that the Agreements' cost-splitting provision make them unconscionable is without merit. The fact that an FLSA plaintiff may incur costs associated with arbitration does not make a cost-splitting provision per se unconscionable. Ohio courts "have consistently recognized that given the strong public policy in favor of arbitration, a court shall not deem an arbitration clause unconscionable simply because it imposes higher fees than filing a complaint in the trial court." *Sikes*, 2004 WL 67224, at * 4. The increased costs of arbitration over litigation must be "so high as to make access to the forum impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013). "The party complaining of the costs of arbitration bears the burden of showing the likelihood of incurring such costs." *Robinson*, 100 N.E.3d at 986. (citation omitted). Mere risk that a plaintiff will incur "massive" costs "is too speculative to justify the invalidation of an arbitration agreement." *Id.* (citing *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 25–26 (Ohio 2008).

15

Here, plaintiffs have failed to provide any evidence on the cost of arbitration or whether that costs would be so high as to be prohibitive for plaintiffs. There is a stark difference between a potential litigant choosing not to pursue legal remedies due to litigation costs (whether in a judicial forum or arbitration) and costs that are so high as to virtually eliminate the right to pursue a legal remedy. Plaintiffs simply speculates that "arbitration costs will be massive…." (Opp'n at 156.) This is insufficient to demonstrate that the cost of arbitration would deter plaintiffs, or others similarly situated, from seeking to vindicate their statutory rights through arbitration. *See Robinson*, 100 N.E.3d at 986. As one Ohio court pointed out, without more definitive evidence related to the purported prohibitive nature of arbitration costs, "every consumer who voluntarily signed an arbitration clause could defeat its application by simply asserting an indefinite demand amount and claim[ing] that the [arbitration] fee is unconscionable." *Sikes*, 2004 WL 67224, at *5. The Court also notes that unexpected costs are not unique to arbitration. FLSA plaintiffs may be required to pay a prevailing defendant's costs associated with defending an FLSA action. *See Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012) ("[A] prevailing defendant can recover costs under the FLSA."). Plaintiffs have failed to show that the Agreements' cost-splitting provision is subjectively unconscionable.

Having determined that the Agreement is valid, the Court now turns to the scope of the Agreements.

**B. Scope of the Agreements**

The Court must determine the scope of the Agreement, and whether plaintiffs'
claims fall within that scope. Under the terms of the Agreement, the parties, agree that
"ANY CLAIM, CONTROVERY, OR OTHER DISPUTE RELATING TO …
EMPLOYMENT … SHALL BE RESOLVED BY ARBITRATION, IN LIEU OF JURY
TRIAL OR ANY OTHER LEGAL PROCEEDING…." (*See e.g.*, Agreement at 113,
emphasis in Agreement.) Further, plaintiffs agreed to "submit any claims arising out of,
relating to, or in connection with [their] employment … to binding arbitration…." (*See
Id.* at 114.) Such language indicates the parties' explicit intention to arbitrate. "When
faced with a broad arbitration clause, such as one covering *any* dispute arising out of an
agreement, a court should follow the presumption of arbitration and resolve doubts in
favor of arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (emphasis in
original) (citation omitted). "'[O]nly an express provision excluding a specific dispute, or
the most forceful evidence of a purpose to exclude the claim from arbitration, will
remove the dispute from consideration by arbitrators.'" *Id.* (quoting *Masco*, 382 F.3d at
627). While the Agreements at issue do contain certain "[e]xclusions from
[a]rbitration[,]" plaintiffs' claims do not fall within those exceptions—nor do plaintiffs
argue that they do.

Plaintiffs' claims under the FLSA and Ohio law all stem from their employment
with Connectivity Source. As such, the claims fall within the plain language of the
Agreements and are, therefore, subject to resolution by binding arbitration. (*See e.g.*,
Agreement at 113–14.)

### C.  Plaintiffs' FLSA Claims are Arbitrable

Because plaintiffs' assert federal statutory claims, the Court must determine whether they are subject to the FAA. Plaintiffs' first cause of action is a federal statutory claim under the FLSA. "Employment-related statutory claims … may be validly subject to an arbitration agreement enforceable under the FAA." *Morgan v. United Healthcare Servs., Inc.*, 1:12-cv-676, 2013 WL 1828940, at *4 (S.D. Ohio Apr. 30, 2013). Further, "courts routinely find that an employer may enter into a binding arbitration agreement for any claims under the FLSA. *Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-2140, 2011 WL 294407, at *2 (W.D. Tenn. Jan. 27, 2011) (citing cases). Accordingly, plaintiffs' FLSA claims are subject to arbitration.

### D.  Arbitration as to the Opt-In Plaintiffs

Plaintiffs assert that, even if Madhat is subject to arbitration, the Court should wait to resolve the arbitrability of the opt-in plaintiffs' claims until after conditional certification.  This argument is unavailing. "[A]ll opt-in plaintiffs in an FLSA Collective action are 'party plaintiffs,' with equal status upon opting-in." *Miller v. Jackson*, No. 3:10-cv-1078, 2011 WL 1060737, at *6 (M.D. Tenn. Mar. 21, 2011). "[C]onditional certification, *per se*, does not have a substantial effect on a collective action, but the filing of an opt-in consent does: [t]hese opt-in employees are party plaintiffs…." *Myer v. TRG Customer Sols., Inc.*, No. 1:17-cv-52, 2017 WL 5478398, at *7 (M.D. Tenn. Nov. 15, 2017). With that backdrop, it is clear that the opt-in plaintiffs are on equal footing with Madhat for purposes of arbitrability, and all plaintiffs in this case have signed identical arbitration agreements. (Doc. Nos. 14-2, 14-3, 14-4, 14-5, 21-2, 21-3, 21-4). Having

18

already determined that the Agreements are valid, all plaintiffs are required to submit their claims to binding arbitration. It would make little sense to keep this case active in the off chance that an employee who did not sign an arbitration agreement may, at some point, opt-in.

And in any event, the Agreements all contain a class/collective action waiver provision stating, in relevant part, "[n]either party will have the right to participate in a class, representative, or collective action, nor as a class representative, class member or an opt-in party … and no arbitrator shall have the power to treat any claim as a collective, class, or consolidated claim." (*See e.g.*, Agreement at 113.) The Supreme Court has made clear that class action waiver provisions are enforceable. *See Epic Sys. Corp. v. Lewis*, --U.S.--, 138 S. Ct. 1612, 1619, 200 L. Ed. 2d 889 (2018) (holding that under the FAA, Congress instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings). Even the FLSA's "express provision for collective legal actions does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration." *Id.* at 1627 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)). It is clear that FLSA plaintiffs may waive their ability to proceed collectively, as plaintiffs did here. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1336 (11th Cir. 2014) (collecting cases). The Court also notes that plaintiffs make no argument that that the Agreements' "Consolidation of Claims" provision should be stricken for duress, fraud, or unconscionability. As such, the Court concludes that the plaintiffs may not proceed in this action, or in arbitration, as a collective and, therefore, there is no reason for this case to proceed onto conditional certification.

### E.  Whether to Stay or Dismiss

"If a plaintiff's cause of action is covered by an arbitration clause, the court must stay the proceedings until the arbitration process is complete." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). "However, litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill, Inc.*, 198 F.3d 245 (table), 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Integrated Aircraft Sys., Inc. v. Porvair Filtration Grp., LTD.*, No. 5:12-cv-493, 2012 WL 3263516, at *1 (N.D. Ohio Aug. 9, 2012) ("In cases where all claims are referred to arbitration, the case may be dismissed rather than merely stayed"); *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 729 (W.D. Ky. 2014) ("[B]ecause the Court is satisfied that all of the Plaintiffs' claims are subject to arbitration, it will dismiss this action, rather than stay these proceedings pending arbitration."). Where, as here, all plaintiffs' claims fall within the scope of an arbitration agreement and "'there is nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate." *Stachurski*, 642 F. Supp. 2d at 764 (quoting *Ewers v. Genuine Motor Cars, Inc.*, No. 1:07-cv-2799, 2008 WL 755268 at *7 (N.D. Ohio Mar. 19, 2008)).

In determining whether to dismiss, the Court has reviewed the complaint and construed all facts and reasonable inferences that can be drawn therefrom in the light most favorable to plaintiffs. In so doing, the Court has determined that (1) the parties are subject to valid arbitration agreements and (2) all plaintiffs' claims, including their FLSA

claim, are subject to the Agreements. As such, the parties have agreed that all issues raised must be submitted to arbitration. The Court will dismiss, rather than stay, the case.

**III.        CONCLUSION**

For all the reasons contained herein, the Connectivity Sources' motions to compel arbitration (Doc. Nos. 14, 21) are GRANTED, in that the entire dispute is subject to arbitration. Since arbitration will resolve all outstanding issues in this suit, the case is DISMISSED without prejudice. The parties are hereby referred to arbitration for resolution of this dispute consistent with the provisions of the Agreements.

    **IT IS SO ORDERED**.


Dated: September 3, 2020                        _____
                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**